The next case on the docket today is agenda number 23, number 129087, Acuity v. M I Homes of Chicago. Counsel for the appellant, are you prepared to listen? May it please the court. The key to this case is the distinction. Did you say your name for the record? I'm sorry, Joseph Postel for Acuity Insurance. The key to this case is the distinction between property damage and economic loss. A CGL policy covers property damage, it does not cover economic loss. If it did cover economic loss, it would be something akin to a performance bond. If I can just begin discussing this distinction by reading three short sentences from this court's seminal opinion in Travelers v. Alger. Comprehensive general liability policies are intended to protect the insured from liability for injury or damage to the persons or property of others. They are not intended to pay the cost associated with repairing or replacing the insured's defective work and products, which are purely economic losses. Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond. So, am I home? As I'm asking this, of course, what we're doing here is we're trying to determine if there is a duty to defend. We need to look at the underlying complaint and then compare it to the policy in question. So, can you articulate for us specifically what is pled in the complaint? In other words, we understand what the language of that case is, but specifically what is pled in this complaint in terms of defect, in terms of et cetera? That's a good question. I happen to have a copy of the complaint with me. And interestingly, so there are two types of recovery sought in the complaint. One is for the defects in the townhome project, and then there's this catch-all request for relief for damage to other property, which is not specified at all. Defects? Defects is the word used in the complaint? Let me find the damning clause. Okay. Count one. There are two counts. One is for a breach of warranty. The other is for a breach of the implied warranty of habitability. Count one, the addendum clause requests judgment against MI homes for damages in an amount equal to the total cost of repair or replacement of the aforesaid defects and costs to repair damage to other property. So interestingly, the defects in the townhome project are set out in great detail. Paragraph five on page three of the complaint, that's page 539 of the record, lists I believe it's 16 different defects in the construction of the townhomes. Is it defects or damage? Defects in, well... Is that kind of where we are? We understand the idea of defects in shoddy workmanship versus damage to other parts of the project. So how is this alleged in the complaint? Well, it's alleged that, for example, as pertinent here, that the exterior siding was not installed properly and as a result there was moisture penetration into the interior of the townhomes. So that seems to be the dominant defect that's at issue here. There are others. Since ACQUITY's named insurer, H&R Exteriors, was the subcontractor responsible for exterior siding, that seems to be the more relevant of the defects alleged. But there are others. In any event, all of the defects in the townhomes relate to damage to the project itself. There are no allegations of defects to other property. There is simply the conclusory allegation that there was damage to other property. We don't know whose property. We don't know what kind of property. Did it belong to somebody that was a complete stranger to the townhome project? Did it belong to the unit owners? Was it their personal property? Let's talk about what we're doing here again. We're talking about determining if there's a duty to defend and our task is to look at the four corners of the complaint and compare it to the four corners of the policy. You say that the allegations in the complaint are too vague for us to determine what this damage was? Is that kind of what you're saying? Not exactly. For example, the Lloyd's London v. Metropolitan Builders case, the appellate court pointed out that the allegations of damage to personal property were vague, but at least it identified whose property was damaged. And so on that basis, the court was willing to find a duty to defend. So I wouldn't say that our concern here is vagueness. I would say our concern is there are simply no facts alleged of damage to other property. No facts. It's a conclusion to say damage to other property. And here's the problem with that. I'm going to read you something from an opinion by the 2nd District Appellate Court. It's not long. But before I do that, let me point out the standard. And this was quoted in M.I. Holmes' brief, the Valley Forge v. Swiderski Electronics case that this court decided in 2006. They cited it and they were correct to do so. The standard is for determining the duty to defend is the court must compare the facts alleged in the complaint to the policy text to determine if those facts potentially fall within the coverage provided by the policy. Well, what's the court to do when there are no facts? Apparently, the appellate court thought that if there are no facts and the court really can't tell whether this is a potentially covered claim, the court is supposed to resolve that lack of information, that doubt in favor of the insured. And I would submit to you that that is incorrect. The GM sign case, the court said that deliberately and strategically leaving the complaint so bereft of factual allegations that myriad unpleaded scenarios could fall within its scope renders meaningless a court's duty to compare the facts alleged in the complaint to the relevant policy language. I think that's precisely the situation here. The court simply cannot perform its function with no facts. And continuing, the GM sign court said, while an insurer's refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage, a court can rationally apply this rule only if the underlying complaint contains sufficient factual allegations to constitute a valid pleading. Damage to other property is not a fact. Counsel, I have a question. Assuming other property in the complaint refers to, say, common areas of the property or the townhome complex, would that trigger the duty to defend? Well, I know that's your argument, but I was asking about common areas of the property that doesn't belong to a community. But it's still the construction project. So it's not covered. It's economic loss. And that's very well settled. I don't think that's really in dispute here. In fact, in the appellate court, MI Homes conceded that there's no coverage for damage to the townhome project. Their position was that only damage to other property would trigger a duty to defend. The problem is damage to other property is not a fact. How is the appellate court or the trial court or the appellate court or this court supposed to determine whether damage to other property asserts or alleges a potentially covered fact when there are no facts? And the absurdity of the situation can be seen from the pure hypothesis that the appellate court came up with. I'm sorry. Yes, the appellate court came up with, well, maybe it was personal property of the association in the common areas. That was not pled. There's nothing in the complaint from which it can be inferred that there was personal property of the association. The court is speculating. Why? Because there are no facts pled. So because of the complete lack of factual allegation, and I mentioned the detailed allegations on the defects in the project itself, to draw a contrast between the wealth of detail supplied on those allegations of damage to the project and the complete and utter lack of any facts in the allegation of damage to other property. I just, I don't see how the court can do its job with that information. I would like to add that. Can I go back to the big idea here? Your position is that if we look at the cases, Alger, et cetera, here in Illinois, that if, in fact, there's damage, if the general contractor is, there's a breach of contract against the general contractor, we look at his policy to determine whether or not there's coverage. What we're looking at is the entire project. So let's say there's an allegation of shoddy workmanship installing windows. And therefore, there is leaking, and therefore, there's mold in the walls or something like that. Your position would be that rather than looking at the windows, the specific kind of shoddy workmanship, whatever happened after that shoddy workmanship, if it's contained in the entire project, that's the end of the discussion, that that's economic loss, that's not covered in the policy. Is that your big idea here? If the insured in question, whose coverage is in dispute, was responsible for the entire project, then yes. Because the fact that, as in this case, that party, MI Holmes, was an additional insured on the policy of a subcontractor that was not responsible for the entire project, whether the subcontractor would be covered is another story. That's not before this court, because the subcontractor's coverage is not in dispute here. It's the developer's coverage that's in dispute. And damage or defects in any part of the developer's project are the developer's work, and they're not covered. It's economic loss. It's very much like the Transstate Airlines versus Pratt & Whitney case decided by this court in 1997 that I cited. Not an insurance coverage case, but nonetheless, I think a very helpful case to the court, because it talks about the difference between property damage and economic loss. In the situation where one part of the product malfunctions and damages another part, in that case it was an engine that malfunctioned and damaged the airframe of the airplane. And the reason that there was a discussion about whether that was property damage or economic loss was for purposes of the Mormon doctrine to determine whether the aggrieved owner could sue and tort or contract. And so the court looked at the various approaches and determined that the product bargain for approach was the correct approach to determine whether this was economic loss or a property damage. And the product bargain for it was the airplane. It wasn't the engine. It wasn't the airframe. It was the airplane. So the airplane was damaged, and that is economic loss, disappointed expectations. The fact that one part of the airplane damaged another part of the airplane does not allow for a discrete project approach, which is exactly what the appellate court took in this case and in a prior decision, ACUITY versus 950 West Huron. In that case, Your Honor, ACUITY versus 950 West Huron, the court did consider coverage for a subcontractor, and the issue was whether damage caused by defective work of the subcontractor resulting in damage to another part of the project beyond the subcontractor's work is that property damage. Is that damage to other property? And in 950 West Huron, the court decided, yes, it is. I would submit to you that that was an incorrect approach. It's inconsistent with the product bargain for approach that this court took in the current state airlines case. But this court doesn't have to reach that issue today because, again, even under the discrete project approach that was adopted by the court below, the appellate court below, it doesn't apply here because there is no discrete project that was MI Holmes' work. MI Holmes' work was the entire project. So that whole issue is something the court doesn't need to reach. But I would submit if the court does reach it, it should follow the reasoning of the trans-state airlines case and find that the product bargain for approach is the proper approach. The product bargain for here is the townhome project. Mr. Postol, can I just ask you just a foundational question in regards to terms? Elger involved a comprehensive general liability policy. This case involves a commercial general liability policy. Is there any distinction between the two? No. The insurance services office, the industry trade association that writes these forms, they just changed the name. I think it was in the early 80s perhaps. And, of course, the policy forms do change in other ways over the years. None of those changes are before the court right now. But, yes, so comprehensive and commercial are interchangeable. So I see that my yellow light is on. I didn't even talk about the statutory authorization or standing issue. I'll try to cover that briefly. So the townhome association sued MI Holmes' in a representative capacity under the statute, the Common Interest Community Association Act. So necessarily the claim they're making is limited to what the act authorizes them to prosecute. And that is for, let me find the language, matters involving the common areas or more than one unit. That necessarily means the project itself. The common areas are clearly part of the project. The units are part of the project. So they're suing in a representative capacity to recover damages for the common areas or more than one unit. It's true. But damage to other property does not fit within that statutory grant of representative capacity. Damage to other property necessarily means damage other than the townhome project. And if that's the case, then it's not covered. Well, couldn't that be property contained within those common areas? I mean, often there's clubhouses or there are other things. So when you say property, there's a lot that would not have been just part of the structural part of the project, correct? There could be personal property of the unit owners, but that would not be within the statute. How about what I asked you about was in the common areas? Is there something that was controlled by the townhome association? Again, still part of the project. The furnishings and the personal property owned by the... Oh, furnishings? Well, I suppose so. That wouldn't be part of the project per se. But again, that's not pled. Nothing like that is pled. And let me find another quick quote for you, which I think is very, very apropos. The red light is on, but it will allow you to continue to answer this question. The appellate court in the West Van Buren case, which we've cited and discussed at length, said, We cannot read into the complaint something that is not there, but rather we are confined to what was actually alleged. So the personal belongings of the association in the common areas was not pled, and I submit that this court should not read it into the complaint. Thank you very much. Good morning. May it please the court. Eric Sparks on behalf of In My Homes of Chicago, LLC. Under longstanding principles, In My Homes of Chicago is entitled to a defense from Acuity Insurance as an additional insured under its policy of its named insured, H&R Exteriors. It was a subcontractor who performed work alleged to be defective in connection with the townhomes at issue in this case. The appellate court correctly decided that a duty to defend applied, and the reasoning of the appellate court was correct as well, not only its outcome. Contrary to Acuity's position, nothing in the appellate court's decision requires this court to change anything about its precedent in Elger or the appellate court progeny of case law that has followed it. Indeed, for In My Homes to prevail in this matter, no changes in Elger are required at all. In My Homes is entitled to a defense because there is an allegation in the underlying litigation that states that the subcontractor's defective work caused property damage accidentally, which was constituted a physical injury to the townhomes and to property other than the townhomes. And yet, of course, that's the extent of the pleading. And so here we are struggling with what that means, and yet we have no facts to make an analysis. What do we do with the pleading problem? To that, Your Honor, under the standard that's applicable here, which is if there's a potential for coverage based on the allegations in the complaint, then the duty to defend will arise. And that's because the duty to defend is broader than the duty to indemnify. And any ambiguity or defect in the underlying pleading is to be construed liberally in favor of coverage for the insurer. Those are principles that are enunciated by this court's own precedent, as well as in many cases cited in our brief from the appellate courts. To answer your question about the property, I submit that the allegation, the factual allegation, that is relevant to the question of whether the duty to defend arises has already been stated. The key factual component is that it was property damaged other than the townhomes. That's what gives rise to the potential for coverage under the policy. Counsel, what exactly does other than the townhomes mean? I mean, what exactly does that mean? In this case, Your Honor, it may mean personal property of the unit owners. It may mean personal property owned by the association. It may mean the real estate that could have been subsequently constructed in the common areas. Counsel, but isn't Illinois a fact pleading state where you have to plead facts? It absolutely is, Your Honor, which is a rule that's applicable at the level of the underlying litigation. But the context in which this arises is a question of whether or not a duty to defend has arisen based on an allegation that says there is property damage to something other than the townhomes, which, of course, in my homes has no control over the allegations of that complaint. That's at the hands of a party plaintiff who has made that claim against us. So are you, in understanding what all of this means, are you in agreement with the appellant counsel that when we look at these issues, that we're looking at the entire project, that if shoddy workmanship in one place causes damage to the entire project, then, therefore, there is no coverage and, therefore, no duty to defend. The only time there can be a duty to defend based on allegations of something else, the furniture, the car, and the garage, do you agree with that principle? I do not agree with that principle, although I do not believe that changing that principle, which is a principle enunciated by the appellate courts, it's not a principle enunciated by this court in Alger. It's a principle that has been enunciated in the appellate courts subsequently. It's not necessary for us to have a change in that law in connection for there to be a duty to defend to arise here. However, that is not our position. And, for example, as the appellate court noted in our ruling, the first district pointed out that it's also the case that there's a basis for coverage because this is a coverage matter as an additional insured. In my homes, as an additional insured, the policy at question is for the policy of the named insured, H&R exteriors. As an additional insured, MI Homes is entitled per the terms of the policies to the coverage that H&R is entitled to. Now, the allegations pertaining to damage to the townhomes flowing from H&R's allegedly defective work, it's also alleged in the underlying complaint that that defective work caused damage to the townhomes beyond the scope of H&R's work. So my kind of simple example, the subcontractor puts in the windows, doesn't see them properly, and therefore there's leakage, and in the walls there's mold. Something else happens. And what would your analysis of that be? The analysis of that is if the drywalls, for example, that are damaged by the water infiltration is outside the scope of work of the subcontractor who installed the windows, then that would be property damage that's other than the subcontractor's work. It's other than its scope of work. And so it would be covered as property damage under the policies. And in that case, a subcontractor's coverage then is given to the additional insured as well. And this is, in effect, the holding that was made by the Seventh Circuit in the Westfield Insurance v. National Decorating case. That conclusion, I think, is correct, and it's correct on the basis of our appellate court decisions which have stated that for a subcontractor on its own particular policy, when there's an allegation that its construction defects have led to property damage outside the scope of its own work, that constitutes property damage and an occurrence for which there's coverage. And I believe that that's correctly decided. So those are some of the reasons why we disagree with the contention that there could be no coverage if the alleged property damages are only to the project itself. There are exceptions to that. In fact, under the terms of the policies, this is an important point when the court is considering Eldren's progeny in relation to the changes in the terms of the policies themselves since that time. As you may have read in the amicus brief that provides from the General Contractors Association, it provides a detailed listing of the history of those changes. You can see in the policy itself, since the court's directive to us is to construe the insurance policies as a contract, that requires us to construe the contract as a whole. There's an exception in these contracts which states your work is accepted. In that exclusion, there's an exception that says, if, however, your subcontractor performs that work that leads to the property damage, then there's coverage, or the exclusion does not apply. The fact that that is in the policy itself demonstrates that the intent of the insuring agreements at the level of occurrence and property damage must already have within them the possibility that your work itself could be and could constitute an occurrence of property damage under the policies. And that is language which is relatively new since 1996 in these policies. But that's a point about the overall intent of what the terms mean when you're thinking about the insuring agreement at the top level of the CGL policy. In addition, in addition to specifying the defects and damage to other property, I'll briefly just mention, unlike the West Van Buren case, in our situation, the plaintiff has pled in the ad damnum that it's seeking damages for this property damage to other property. It's expressly alleged in the ad damnum. Secondly, as to standing, the statute under which the underlying plaintiff has alleged to have standing is very broad. It's much broader than ACQUITY has contended in its briefs. The provision itself says that the association has standing with respect to matters involving the common areas or more than one unit for the members or the unit owner's interests as they may appear. Now, that's extremely broad description of what may be captured. The appellate courts have actually held in two cases in similar situations. But in the case of Deer Path, cited in our brief, and the case of Sunnyside, have held that tax claims pertaining to those individual unit owners, that the association had standing to bring those claims on behalf of those unit owners because of the language in it that says any matters involving more than one unit. So it's important to note, too, as a matter of ACQUITY's argument, that there's no standing for the claim with respect to property damage other than to the townhomes. In that connection, the provision in the Common Interest Community Association Act does not say that they're limited to seeking claims that involve damages to the units themselves. It does not say that it involves damages only to the common areas. It says it gives standing for matters involving the common areas and matters involving the unit owners as their interests may appear, which can touch their personal property interests if this is what the unit owners decide to allow their association to sue on their behalf. And that's why the claims here, there is standing. I should note as well, however, there's a question under standing since standing is an affirmative defense under Illinois law. It's really only appropriate for that to be an issue to be raised by the duty to defend. It's in the duty to defend that the insurer should have the obligation to raise the defense of lack of standing. It shouldn't be used against an insurer at the beginning prior to that issue being determined. And so it's an important point as well that I would submit it's not even appropriate for the insurance company to raise the point of lack of standing as a way to attempt to evade a duty to defend. Lastly, I'll say in connection with Elger and its progeny, although MI Homes does not need any changes in that law in order to prevail and have a duty of defense to arise here, it is the case that some of the progeny of Elger appear to have considered extraneous matters in connection with what should just simply be a plain language analysis of the meaning of the terms in the insuring agreement of the insurance policies. Those should just simply be construed according to their plain language. Considerations such as, but if you construe it in a particular way, it's going to turn the policy into a performance bond. Or notions that you can't allow the policy to reach liability that is contract-based as opposed to tort-based. It's just simply not the case that the policy language has any reference to these concepts in it. They simply do not. In that respect, Elger and its progeny have incorrectly provided justifications for a particular analysis under those cases. For example, in Elger itself, the alleged defect in the plumbing system there was one where it had not yet failed and led to property damage. And the court had said, the court held, there wasn't physical injury. And that's why there wasn't any property damage in that connection. That is understandable and makes sense. Following that up with, but if we read it otherwise, it would have these other extraneous effects are frankly not really to be considered in that context because that goes beyond just simply giving a mere construction of the insurance policy's language. And in fact, doing so actually also would violate certain principles such as if there is an ambiguity in the insurance terms, that ambiguity is going to be held against the drafter, which is the origin of the principle that any ambiguities in connection with coverage are going to be held against the insurance company and instead construed liberally in favor of the insured. It's because the insurance company is the drafter of those policies. They can change them and sell new policies if that's appropriate after they've had a particular outcome under a policy. I will end coming back to the beginning. At the beginning there was a question concerning the specificity of the allegations concerning the property damage to property other than the townhomes. And it's important to recognize in this context that because the duty to defend is much broader than the duty to indemnify, and because the complaints at issue have to be construed liberally in favor of the insured and not only the policy but the underlying complaint, both of which have to be construed liberally in favor of the insured. Given that, the courts have held that unless the underlying complaint has expressly precluded the possibility of coverage, then the court instead should find that there's a duty to defend that has arisen based on the mere potential for coverage under the policy. And here submit that the allegations in the underlying complaint are sufficient to meet that standard where it's been alleged that there's property damage that was accidentally caused by a subcontractor and that that damage caused property damage to something other than the townhomes. And on that basis, they're seeking a judgment against MI Holmes expressly in the addendum of the complaint. In that situation, a duty to defend has arisen. And I submit that this court should affirm the appellate court's decision. If you have any other questions. Thank you very much. Thank you, Your Honors. Counselor Bonner. May I ask a question on that last point where your theory is that there is no coverage and therefore no duty to defend where the allegations are about the entire project. Right. And we know the complaint here has some other language that talks about damage to other property that would be consistent with your theory. You know, we've talked about furniture, cars in the garage and that kind of thing. Counsel, as I could hear that, of course, the procedural position is that we're not talking about a motion to dismiss the underlying complaint for lack of specificity. We're trying to figure out how to do this process of determining whether the complaint falls within the language of the policy. And as counsel said, our task, I think, is to determine whether there is potential coverage. So that's his argument about the lack of specificity in the underlying complaint. What's your response to that? If we're just supposed to look for potential coverage. Well, let me read you what the appellate court said on that very question in Westfield Insurance v. West Van Buren. In response to that very argument, and the dissent in that case actually took that position that whether this allegation of damage to the belongings of the unit owner should be considered in determining whether there's a duty to defend. The dissent's view was it shouldn't be considered. It should be raised in the underlying case as a standing question. And the court said the issue does not necessarily involve standing, but the more nuanced consideration of whether the underlying complaint sufficiently raised a theory of recovery together with supporting facts that trigger potential coverage under the policy. So as applied here, the theory of recovery is they're proceeding under the Common Interest Act's representative capacity authorization. And the supporting facts are not there. There are no supporting facts. Mike, a quote from paragraph 43 of the underlying appellate court opinion here. They say, we need not answer those questions here, although we raise them in the hope that other courts and perhaps our Supreme Court may bring clarity to these nuanced issues of coverage under the CGLA. So the appellate court is saying to us, good luck. Indeed. So that's why we're here today. And if I may, Your Honor, unless there are any other questions, I just wanted to revert. I wanted to address the points made by counsel in reverse order. And first of all, the idea that the subcontractor exception to the exclusion for damage to your work should be read because of the principle that the policy has to be construed as a whole. That's contrary to Illinois law, not that the policy has to be read as a whole. But the Stonebridge Court, that's a lengthy and learned opinion from the 2nd District in 2008, specifically said, look, we don't get to exclusions and therefore neither do we get to exceptions to exclusions unless there's property damage caused by an occurrence. If you don't have property damage caused by an occurrence, the exclusions are irrelevant. The Ohio Supreme Court, not that I'm suggesting that you get into all these foreign cases because I don't think it's necessary, but the Ohio Supreme Court, which is bucking this trend that they're relying on and is sticking with the Illinois view, said the same thing. There's no reason to look at the exception to the exclusion if there isn't property damage caused by an occurrence. I submit that that is the view. This court should take on the extrinsic evidence. Elger specifically said that the same definition of property damage at issue here is not ambiguous and we don't need to resort to extrinsic evidence, policy drafting history, that sort of thing. Let's see. The idea that M&I Homes is entitled to the same coverage as H&R and therefore because H&R, under the discrete project rationale of 950 West Huron, would be entitled to coverage, therefore so should M&I Homes. I can't even understand that. The notion that the additional insured has the same coverage as the named insured, they've cited no authority for that. That is not the case. All you have to do is read the language of the policy. The named insured has coverage for property damage caused by an occurrence, period. Of course, there are exclusions. But they're covered for any property damage caused by an occurrence that they're sued for. The additional insured is not entitled to coverage for anything they're sued for. It has to be something arising out of or caused by the named insured's work. So there's an obvious difference between what a named insured and an additional insured have in terms of coverage. I want to point out that this idea that the insured is at the whims of the plaintiff, the plaintiff's pleading and they have no control over that and so therefore they shouldn't be punished for any defects in the pleading. Well, let me tell you about that pleading by the association. As I've argued in the brief, the pleading is a transparent attempt to trigger coverage. And what I mean by that is they're using all the right buzzwords to make it appear, to create the illusion that there's a covered claim without any facts to support that. Here's what the complaint says at paragraph 8. The defects caused physical injury to the townhomes. Okay, that's a quote from the policy's definition of property damage, physical injury. And then it says that is altered the exterior's appearance, shape, color or other material dimension. That's a direct quote from Alger's interpretation of the definition. After construction of the townhome was completed from repeated exposure to substantially the same general harmful conditions. That's a verbatim quote from the policy's definition of occurrence. Counsel, I noticed it too. It's as if plaintiff's counsel was very wise in the world of insurance law and shaped the original breach of contract case to address all of the cases we're talking about. Exactly. I'm not sure where that takes us though. Perhaps that's an excellent lawyer who understands the landscape of this kind of law. So I'm not sure the fact that, as you say, the complaint is drafted to meet all the issues that we're talking about today in the insurance context. I'm not sure what we do with that fact. Well, if there were facts that backed up any of those legal conclusions, then I guess we'd be stuck with it. But there are no facts. That's the problem. These are all legal conclusions lifted right out of the cases and the policy definition. So the idea that this should redound in favor of the insured and trigger a duty to defend, I mean, that's just not fair. True, they didn't draft it, but this is obviously a non-covered claim, but it's using all these legal buzzwords and phrases to create the illusion that it's a covered claim or a potential. Or a potential. Pardon? Or a potential. Or a potential, right, right. But the problem is to look at it, is there a potential indemnification? That question has to be answered by looking at the facts alleged, and there just aren't any. I see I'm almost out of time. Just last night, as far as damage to the unit owner's personal property, that's something that is not alleged here. And it was alleged in Western Niberia, and the court still found that it didn't trigger a duty to defend because there was no recovery sought for damage to the unit owner's personal property. It was just sort of a background fact unattached to any theory of recovery. The statute doesn't authorize the association to seek recovery for damage to unit owner's property. And there's at least one case, it's a Seventh Circuit case, the Metro-North Builders v. Allied Property, that specifically said that. It's not a collective loss, it's an individual loss. The statute doesn't authorize the association to sue for it. Thank you very much. I appreciate your time. Thank you, counsel. Agenda number 23, number 129087, Acuity v. MI Homes in Chicago, will be taken under advisory.